# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| AG 18, LLC dba ARROW GAMING,<br><br>*Plaintiff*,<br><br>v.<br><br>DRAFTKINGS INC., a Nevada corporation,<br>DRAFTKINGS INC., a Delaware corporation, and<br>CROWN GAMING INC., a Delaware corporation<br><br>*Defendants*. | Civil Action No. 21-15737(KM)(JSA) |

## BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISQUALIFY

James E. Cecchi, Esq.
Lindsey H. Taylor
CARELLA, BYRNE, CECCHI, OLSTEIN,
BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, NJ 07068
Tel: (973) 994-1700
Fax: (973) 994-1744

G. Hopkins Guy III
BAKER BOTTS L.L.P.
1001 Page Mill Road Building One, Suite 200
Palo Alto, CA 94304-1007
(650) 739-7500

Jamie R. Lynn
BAKER BOTTS L.L.P.
700 K St. NW
Washington, DC 20001
(202) 639-7786

Robert L. Maier
Michael E. Knierim
BAKER BOTTS L.L.P.
30 Rockefeller Plaza
New York, NY 10112-4498
(212) 408-2500

*Attorneys for Defendants DraftKings Inc.,*
*DraftKings Inc., and Crown Gaming Inc.*

## <u>TABLE OF CONTENTS</u>

**Page**

I. PRELIMINARY STATEMENT ............................................................................... 1

II. FACTUAL BACKGROUND .................................................................................. 2

III. LEGAL STANDARDS .......................................................................................... 10

    a) The Court Has Power to Disqualify Counsel........................................................ 10

    b) The Court Has Power to Impose a Confidentiality Order to Protect Confidential Information. ........................................................................................................... 11

    c) Alternatively, a Confidentiality Order with a Prosecution Bar and Covenant Not to Sue Is Appropriate when Opposing Counsel Is a Competitive Decisionmaker. ...................................................................................................................... 12

IV. ARGUMENT.......................................................................................................... 13

    a) The Shore Chan Lawyers—Messrs. Shore, Chan and Lipschutz—Should Be Disqualified...................................................................................................... 14

        1. Messrs. Shore and Chan Are Inventors of Patents Directed to the Same Subject Matter as the Asserted Patents. ................................................. 14

        2. Messrs. Shore and Chan Are Competitors and Competitive Decisionmakers........................................................................................ 16

        3. Messrs. Shore and Chan Should Be Disqualified. ................................... 19

        4. Mr. Lipschutz Should Also Be Disqualified for Related Reasons............ 25

    b) Alternatively, the Shore Chan Lawyers Should Either Be Denied Access to Defendants' Confidential Information, or Should Be Subject to a Prosecution Bar and Covenant Not to Sue Defendants. ................................................................. 26

V. RELIEF REQUESTED........................................................................................... 28

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<span style="font-variant:small-caps">Cases</span>

*Applied Signal Tech., Inc. v. Emerging Markets Commc'ns, Inc.*,
   2011 WL 197811 (N.D. Cal. Jan. 20, 2011) ....................................................................20, 28

*Blackbird Tech LLC v. Serv. Lighting & Elec. Supplies, Inc.*,
   2016 WL 2904592 (D.Del. May 18, 2016)...........................................12, 13, 17, 22, 26, 27, 28

*Dewey v. R.J. Reynolds Tobacco Co.*,
   109 N.J. 201 (1988) ........................................................................................................22

*Fragoso v. Zhejun Piao*,
   433 F. Supp. 3d 623 (D.N.J. 2019) ...............................................................................10, 25

*Front Row Techs. v. NBA Media Ventures LLC*,
   125 F. Supp. 3d 1260 (D.N.M. 2015) .........................................4, 6, 12, 17, 18, 19, 22, 27, 28

*Helferich Patent Licensing, LLC v. Suns Legacy Partners, LLC*,
   2012 WL 6049746 (D. Ariz. Dec. 5, 2012) ........................................................................28

*In re Deutsche Bank Tr. Co. Americas*,
   605 F.3d 1373 (Fed. Cir. 2010).......................................12, 13, 18, 19, 21, 24, 25

*In re Gabapentin Patent Litig.*,
   432 F. Supp. 2d 461 (D.N.J. 2006) ....................................................................................10

*Intel Corp. v. VIA Techs., Inc.*,
   198 F.R.D. 525 (N.D. Cal. 2000)........................................................................................25

*Maldonado v. New Jersey ex rel. Admin. Office of Cts.-Prob. Div.*,
   225 F.R.D. 120 (D.N.J. 2004)............................................................................................25

*Murphy v. National Collegiate Athletic Association*,
   138 S. Ct. 1461 (2018).....................................................................................................22

*Pansy v. Borough of Stroudsburg*,
   23 F.3d 772 (3d Cir. 1994)................................................................................................11

*Publicker Indus., Inc. v. Cohen*,
   733 F.2d 1059 (3d Cir. 1984).............................................................................................11

*Steel v. Gen. Motors Corp.*,
   912 F. Supp. 724 (D.N.J. 1995), *aff'd sub nom.*
   *Cardona v. Gen. Motors Corp.*,
   942 F. Supp. 968 (D.N.J. 1996) ............................................................24

*Telebuyer, LLC v. Amazon.com, Inc.*,
   2014 WL 5804334 (W.D. Wash. July 7, 2014) ...................................28

*Twenty–First Century Rail Corp. v. New Jersey Transit Corp.*,
   419 N.J. Super. 343 (App. Div. 2011), *rev'd*, 210 N.J. 264 (2012)........10

*U.S. ex rel. Bahsen v. Boston Sci. Neuromodulation Corp.*,
   147 F. Supp. 3d 239 (D.N.J. 2015) ...........................................10, 20, 22

*U.S. v. Dentsply Int'l, Inc.*,
   187 F.R.D. 152 (D. Del. 1999) .................................................................17

*U.S. v. Miller*,
   624 F.2d 1198 (3d Cir. 1980)...................................................................10

**OTHER AUTHORITIES**

37 CFR 1.56 ....................................................................................................6

Fed. R. Civ. P. 26(c) ...............................................................................11, 26

MPEP § 905.03 ...............................................................................................4

MPEP § 201.08 ...................................................................................7, 9, 23

## I.  PRELIMINARY STATEMENT

Defendants DraftKings Inc. (NV), DraftKings Inc. (DE), and Crown Gaming Inc. (collectively, "DraftKings" or "Defendants") seek an order to disqualify Plaintiff's counsel at Shore Chan LLP ("Shore Chan").  In the alternative, if Plaintiff's Shore Chan counsel are allowed to remain in this case, Defendants seek an order either:  (1) prohibiting Plaintiff's Shore Chan counsel from receiving, or in any way given access to, Defendants' confidential information produced or disclosed in this case throughout the duration of this litigation through any appeals (as reflected in Alternative 2 to the Proposed Order); or (2) imposing a "Patent Prosecution Bar" and "Covenant Not To Sue" (as defined in Alternative 3 to the Proposed Order) on the Shore Chan counsel and any related entities.  Plaintiff's counsel has created this extraordinary situation which requires an extraordinary remedy.

Plaintiff AG 18, LLC d/b/a ARROW GAMING ("AG18" or "Plaintiff") alleges that Defendants infringe certain patents relating to location-based restrictions on networked gaming over mobile devices (such as smart phones or computers), which allegedly determine a user's physical location to ensure that, among other things, placing a wager or entering a fantasy sports contest is from an authorized location.  As explained in DraftKings' opposition to Plaintiff's *pro hac vice* applications, (Dkts. 13, 17), Messrs. Shore and Chan are also inventors of multiple issued patents and at least three pending patent applications relating to location-based restrictions on networked gaming over mobile devices, which patents are owned by their company—Micro-Gaming Ventures, LLC (hereinafter "Micro-Gaming").

It is axiomatic that, in order to properly defend itself in this litigation against Plaintiff's claims of infringement, Defendants will need to disclose confidential technical and business information (including trade secrets) (the "Defendants' CI") to Plaintiff and their Shore Chan counsel.  It is also very likely, if not definite, that Shore Chan counsel will request Defendants' CI

1

in this litigation.  In either scenario, Defendants' CI will be disclosed *directly* to Messrs. Shore and

Chan.  The potential for harm to Defendants is real and significantly outweighs the potential harm

to Plaintiff should the Shore Chan counsel be disqualified from this litigation.

Given that Messrs. Shore and Chan are principals of Micro-Gaming, which owns patents

and has pending patent applications in the mobile gaming and wagering space, there is significant

risk of misuse (inadvertently or otherwise) of Defendants' CI that will eventually be disclosed in

this litigation.  This risk is highlighted by an email from Mr. Shore to Defendants' counsel—sent

***only two days*** after the parties' hearing before Magistrate Judge Jessica Allen—in which Mr.

Shore, after discussing issues related to disqualification, suggested Defendants talk to Micro-

Gaming to license ***his own patents*** (not those of his client in this case) to Defendants.  Mr. Shore

cannot help but comingle litigating this case—where he represents AG18—with advancing his

personal interests and that of his own company—Micro-Gaming—which holds the Shore Chan

Patents (as defined below).  Thus, even the most stringent of confidentiality orders (designating

certain information as "outside counsel eye's only") will not suffice.

## II.  FACTUAL BACKGROUND

1.     AG18 filed suit against Defendants alleging infringement of U.S. Patent Nos.

9,613,498; 9,978,205; 10,497,220; 10,614,657; and 11,024,131 ("the Asserted Patents").  Dkt. 28

(Second Am. Compl.).  Four of the five Asserted Patents are titled "Location Based Restrictions

on Networked Gaming," and all are directed to wager-based[1] gaming over computing devices,

such as smart phones or computers, including determining whether a user is placing a wager from

an authorized location.  *See, e.g.*, Dkt. 28-9 at 26:26-31, Claim 1 of U.S. Pat. No. 11,024,131

---

[1] Although the Asserted Patents and this memo refers to "wagering," in the context of Fantasy Sports contests, DraftKings's fantasy sports contests are games of skill between two or more contestants.

(claiming "dynamically creating a customized list of player gaming options for the player based, at least in part, on the location of the player, wherein the customized list of player gaming options includes authorized gaming options in a jurisdiction corresponding to the location of the player").[2]

2.    AG18 is represented by lead counsel, Messrs. Shore and Chan, as well as their associate, Mr. Lipschutz.  Dkt. 28 at 27.

3.    Messrs. Shore and Chan are named inventors, along with Kermit Lopez and Luis Ortiz, on no less than ten patents directed to wagering and gaming using mobile devices, including U.S. Patent Nos. 8,545,311; 8,632,392; 8,734,231; 9,430,909; 9,483,908; 9,811,976; 9,978,218; 10,013,853; 10,504,333; and 10,916,103; as well as four published applications, U.S. Patent Publication Nos. 2019/0347904; 2020/0066105;[3] 2020/0066107; and 2021/0217279 (two of which are pending); and one pending, unpublished patent application, U.S. App. No. 17/562,828.  Ex. 1 (Cover pages of Shore Chan Patents).   Ex. 2 (Cotropia Decl.) at ¶ 25, Table 1.  Collectively, these are referred to as the "Shore Chan Patents."

4.    A family tree of the Shore Chan Patents is included as Appendix C to the Declaration of Chris Cotropia ("Cotropia Decl.").  Appx. C to Ex. 2 (Cotropia Decl.).

5.    The Shore Chan Patents are directed to substantially the same technologies as the Asserted Patents.  *See* Ex. 2 (Cotropia Decl.) at ¶¶ 18-36.  For example, U.S. Patent Pub. No. 2021/0217279 (one of the Shore Chan Patents) relates specifically to providing gaming and wagering options to a player based on the player's location, as explained in its abstract:

---

[2] U.S. Pat. No. 9,613,498, titled "Systems and Methods for Peer-to-Peer Gaming," similarly claims "creating a list of player gaming options for a player in a current location, . . . wherein the list of player gaming options is limited to legal gaming options in the current location of the player." Dkt. 28-5 at 15:51-58.

[3] An issue notification for U.S. Patent Pub. No. 2020/0066105, published on March 2, 2022, indicates that this patent application will issue as U.S. Patent No. 11,282,343 on March 22, 2022.

*Location based wagering methods and systems*. An online wagering service can be invoked via a mobile device. A determination can then be made regarding the location of the mobile device and a jurisdiction (e.g., state, county, city, etc.) associated with that location. The mobile device and hence a user can be authorized to access the online wagering service based on the location of the mobile device. ***Based on the location, it can also be determined if use of the online wagering service is allowed in the jurisdiction along with prescribed limitations of use in that jurisdiction. Wagering options are then presented via the mobile device, which conform to the laws and/or regulations of the jurisdiction***.

Ex. 1 at 14 (emphasis added).[4]

6.      The United States Patent and Trademark Office ("USPTO") classifies patent applications to enable reliable identification of the "technical subject matter" recited in the classified patent.  Ex. 2 (Cotropia Decl.) at ¶ 23 (citing MPEP § 905.03).  The Asserted Patents and all but two of the Shore Chan Patents[5] have been designated by the USPTO ***in the exact same Cooperative Patent Classification G07F 17/32***.  Ex. 2 (Cotropia Decl.) at ¶¶ 22, 26; *see also* Appx. B to Ex. 2 (Cotropia Decl.) (showing CPCs of exemplary patents from each portfolio). There are approximately 159,000 different subclasses that classify groups of patents directed to the same subject matter.[6]  Ex. 2 (Cotropia Decl.) at ¶ 23.

7.      Further demonstrating the similarity between the Asserted Patents and the Shore Chan Patents, the Asserted Patents cite to the Shore Chan Patents as prior art, and vice versa.  *Id.* at ¶¶ 28-33, Appx. D.  Asserted Patent Nos. 10,497,220 and 11,024,131 cite to Shore Chan Patent

---

[4] In addition to being co-inventors with Messrs. Lopez and Ortiz, Messrs. Shore and Chan are well-acquainted with Messrs. Lopez and Ortiz based at least on years between 2013 and 2016 during which Messrs. Shore and Chan were lead counsel for a patent infringement case filed by Front Row, a New Mexico limited liability company founded by Messrs. Lopez and Ortiz.  *Front Row Techs. v. NBA Media Ventures LLC*, 125 F. Supp. 3d 1260, 1264 (D.N.M. 2015).

[5] Only U.S. Patent Nos. 8,545,311 and 8,734,231 are not designated in the same CPC G07F 17/32.

[6] *See* U.S. PATENT AND TRADEMARK OFFICE, Patent Technology Monitoring Team (PTMT), PTMT Products and Services Brochure, https://www.uspto.gov/web/offices/ac/ido/oeip/taf/brochure.htm.

Nos. 8,545,311; 8,632,392; 8,734,231; 9,430,909; 9,483,908; and 9,811,976.  The Shore Chan Patents, specifically Patent Nos. 9,978,218; 10,013,853; 10,504,333; and 10,916,103; and U.S. Patent Pub. Nos. 2019/0347904; 2020/0066105; 2020/0066107; and 2021/0217279; cite to the published application of Asserted Patent No. 9,613,498 (cited as U.S. Patent Pub. No. 2009/0318219).  Appx. D to Ex. 2 (Cotropia Decl.).  Figure 1 of Appendix D of the Cotropia Declaration (Ex. 2), reproduced below, identifies citations from the Asserted Patents to the Shore Chan Patents and vice versa.  Ex. 2 (Cotropia Decl.) at ¶ 32.



FIGURE 1

8.      Additionally, the Asserted Patents and the Shore Chan Patents cite to similar prior art.  For example, Patent No. 11,024,131 to Koustas et al. and Patent No. 10,916,103 to Shore et al. both cite to applications assigned to International Game Technology filed by Jay Walker et al. (2006/0052157 and 2006/0148551, respectively) and by Binh Nguyen et al. (2008/0004107 and 2008/0076572, respectively).

9.      The Shore Chan Patents are assigned to Micro-Gaming, a Texas LLC of which Messrs. Shore and Chan are co-owners.  Ex. 1; Ex. 2 at ¶ 35; Ex. 3 (Feb. 16, 2022 Hearing Tr.) at

22:24-23:2.  Micro-Gaming's franchise tax report lists Mr. Shore as Secretary and Vice President, and Mr. Chan as Vice President. Ex. 4 (Micro-Gaming Franchise Tax Report) at 1-2; Ex. 5 (Micro-Gaming – Taxable Entity Search Results). Micro-Gaming and Plaintiff's counsel share the same address:  Shore Chan LLP, 901 Main Street, Suite 3300, Dallas, Texas 75202.  Ex. 4 at 1; Ex. 5 at 1; Ex. 6 (Shore Chan – Taxable Entity Search Results) at 1.  Micro-Gaming also lists its Registered Office Street Address as "C/O Shore Chan Bragalone DePumpo LLP."[7]  Ex. 4 at 1; Ex. 5 at 1.  The other individuals identified in the franchise tax report are Mr. Lopez, Micro-Gaming's President, and Mr. Ortiz, who is a Vice President, along with Messrs. Shore and Chan.  Ex. 4 at 1-2.

10.     Messrs. Shore and Chan have signed multiple inventor declarations attesting to being inventors of the applications, including those entitled "Location-Based Wagering via Remote Devices."  Exs. 7-11 (Inventor Decls.); Ex. 2 at ¶¶ 60-61.  In the declarations, both attested they "reviewed and understand the contents of the above-identified specification[s], including the claims" and believed they were original inventors or joint inventors of the claimed inventions.  Ex. 10 (Inventor Decls. filed in Shore Chan Patent No. 10,916,103) at 1.  The declarations acknowledge Messrs. Shore and Chan's duties to disclose information that is material to the patentability of their patent applications.  *Id.*; *see also* 37 CFR 1.56 ("Each individual associated with the filing and prosecution of a patent application has . . . a duty to disclose to the Office all information known to that individual to be material to patentability as defined in this section.").  In prior litigation, Messrs. Shore and Chan asserted that their "contribution to the Micro-Gaming patents relates solely to wagering capabilities[.]"  *Front Row*, 125 F. Supp. 3d at 1294.

11.     The two most recent Shore Chan Patent applications (App. Nos. 17/156,599 and

---

[7] Messrs. Shore and Chan have apparently not updated the name of their law firm in the tax records for Micro-Gaming.

17/562,828) are currently pending before the USPTO, indicating that any claims therein are subject to potential change during prosecution.  Ex. 2 (Cotropia Decl.) at ¶¶ 39, 52-57.  U.S. Patent App. No. 17/562,828, which has not yet been published, is a continuation-in-part application, as are Shore Chan Patent Nos. 8,632,392; 8,734,231; 9,483,908; and 9,978,218.  *See id.* at ¶ 46 (Table 2 illustrating Shore and Chan Gambling Patent CIPs); Ex. 1 at 2, 3, 5, 7.

12.     "A continuation-in-part is an application filed during the lifetime of an earlier nonprovisional application, repeating some substantial portion or all of the earlier nonprovisional application ***and adding matter not disclosed in the earlier nonprovisional application***."  MPEP § 201.08 (emphasis added); Ex. 2 (Cotropia Decl.) at ¶ 19.

13.     Messrs. Shore, Chan and Lipschutz filed motions to appear pro hac vice in this case. Dkts. 10-12.

14.     On September 24, 2021, Defendants sent a letter to the Court to object to the motions for admission pro hac vice, explaining that Messrs. Shore and Chan "are named inventors on, and ultimate owners of, pending patent applications related to the allegedly infringing subject matter at issue in this case," and that "Mr. Lipschutz is a junior associate working in the same office as and presumably under the supervision of Mr. Chan and Mr. Shore."  Dkt. 13 at 1.  The letter further notes that Messrs. Shore and Chan are competitive decisionmakers of Micro-Gaming and are therefore ***in direct competition*** with Defendants.  *Id.* at 1-3.  Additionally, the letter explains that if the case moves forward with Messrs. Shore and Chan as lead counsel, they will receive and have the benefit of Defendants' CI while, at the same time, they are still able to amend their pending patent applications.  *Id.* at 2-3.

15.     In their response to the September 24, 2021 letter, Messrs. Shore and Chan conceded that "the pending patents owned by Michael W. Shore and Alfonso G. Chan are similar

technology to what is at issue in this case."  Dkt. 15 at 2; Dkt. 17 (citing Dkt. 15).  Messrs. Shore and Chan also did not contest that Mr. Lipschutz works under their supervision.  Dkts. 15, 18.

16.     On February 16, 2022, the parties appeared before Judge Allen at a hearing on Messrs. Shore and Chan's motions to appear pro hac vice.  Ex. 3 (Feb. 16, 2022 Hearing Tr.). During the hearing, Mr. Shore argued that "there is nothing that can go into any patent application for Micro-Gaming that is not included in what was disclosed in those specifications ten years ago." *Id.* at 23:4-6.  Mr. Shore argued that "what the Court needs to understand is, they are saying, oh, well, our secret information could end up in a patent application for Micro-Gaming.  It's impossible.  It is physically impossible for that to happen, because everything in a Micro-Gaming patent application has to be included in the provisional specifications or the original patent specifications that were filed a decade ago -- almost a decade ago."  *Id.* at 23:21-24:3.  Mr. Shore also stated that he has not participated "in the prosecution of the Micro-Gaming patents [] for years" because his "background is in mediaeval history and business," while the "three other inventors on [the Shore Chan Patents] are all engineers."  *Id.* at 24:17-21.  Mr. Shore also alleges he and Mr. Chan have a "minority position" in Micro-Gaming (*Id.* at 22:24-23:2), but did not address their titles, responsibilities, the names or titles of other shareholders, distributions of shares between the shareholders, or whether their interests grant them control of Micro-Gaming, and to what extent.

17.     During the hearing, Judge Allen recognized Defendants' concerns, including the "inevitable risk" of Messrs. Shore and Chan serving as litigation counsel and "given what their interests are, what their roles are as prosecution counsel and with respect to patent -- patents in connection with the ones pending in this case."  *Id*. at 14:22-15:5.

18.     On February 18, 2022, Messrs. Shore and Chan's motions for admission pro hac vice were granted. Dkts. 34, 36. The Court issued a scheduling order specifying a deadline for the motion to disqualify on March 7, a deadline for the opposition to the motion to disqualify on March 21, and a deadline for the reply to the opposition to the motion to disqualify on March 28. Dkt. 34.

19.     Following the February 16, 2022 hearing, Mr. Shore emailed Defendants' counsel and stated that "[i]f DraftKings wants *a license to the Microgaming portfolio*," it can contact his business partners Messrs. Ortiz and Lopez.  Ex. 12 (Feb. 18, 2022 Shore email) at 1.  Mr. Shore also specifically identified the three most recent Micro-Gaming patent applications, Pub. Nos. 2020/0066107 (App. No. 16/672,508); 2021/0217279 (App. No. 17/156,599); and App. No. 17,562,828.  *Id.*  Mr. Shore also stated that "the subject matter of these pending applications (and any later divisional or continuation applications) cannot possibly claim any subject matter not within the '554 application's specification," but that statement does not acknowledge the most recent application, App. No. 17/562,828, that was filed on December 27, 2021, is a continuation-in-part and, therefore, contains new "matter not disclosed in the earlier nonprovisional application" to which it claims priority.  *Id.*; MPEP § 201.08; Ex. 2 (Cotropia Decl.) at ¶¶ 39, 45.

20.     Indeed, in another recent e-mail, Mr. Shore threatened sanctions against Defendants for bringing this motion—which is already expressly permitted and scheduled by the Court—and asserted that among himself, Mr. Chan, and Shore Chan LLP, "[n]one of us owe any duty to DraftKings."  Ex. 13 (Feb. 17, 2022 Shore e-mail).

21.     Shore Chan provided a draft confidentiality order, on February 23, 2022, that, among other things, would not prevent an attorney that has access to an opposing party's confidential information from prosecuting patent applications filed before the other party's confidential information is received.

22.     DraftKings' source code is one of its most valuable assets and is considered, and protected, as a trade secret.   Ex. 14, Declaration of Andrew Shriro ("Shriro Decl.") at ¶ 3. DraftKings considers its other technical and business information confidential, and takes steps to protect it.  *Id.* at ¶¶ 3-6.  As inventors or owners of patents and patent applications in the mobile gaming field, DraftKings views Messrs. Shore and Chan, and Micro-Gaming, as competitors.  *Id.* at ¶¶ 7-8.

### III.  LEGAL STANDARDS

**a)     The Court Has Power to Disqualify Counsel.**

The Court's power to disqualify an attorney derives from its inherent authority to supervise the professional conduct of attorneys appearing before it.   *U.S. ex rel. Bahsen v. Boston Sci. Neuromodulation Corp.*, 147 F. Supp. 3d 239, 243 (D.N.J. 2015) (quoting *U.S. v. Miller*, 624 F.2d 1198, 1201 (3d Cir. 1980)).  Disqualification is left to the sound discretion of the district court.  *Id.*

Disqualification questions are intensely fact-specific and it is essential to approach such problems with a keen sense of practicality and a precise picture of the underlying facts.  *Fragoso v. Zhejun Piao*, 433 F. Supp. 3d 623, 627 (D.N.J. 2019).  Nevertheless, "facts in an ethics-related case may be determined through reasonable inferences, as well as by means of circumstantial evidence." *Twenty–First Century Rail Corp. v. New Jersey Transit Corp.,* 419 N.J. Super. 343, 357 (App. Div. 2011), *rev'd,* 210 N.J. 264 (2012).  Resolution of a disqualification motion requires a balancing of the hardship to the client whose lawyer is sought to be disqualified against the potential harm to the adversary should the attorney be permitted to proceed.  *In re Gabapentin Patent Litig.*, 432 F. Supp. 2d 461, 464 (D.N.J. 2006).  In addition, the Court must consider its obligation to preserve high professional standards and the integrity of the proceedings.  *Id.*

b)      **The Court Has Power to Impose a Confidentiality Order to Protect Confidential Information.**

Rule 26(c) provides that a court may, "for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way."  Fed. R. Civ. P. 26(c)(1)(G). Courts also have the inherent power to grant confidentiality orders over materials not in the court file.  *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 785 (3d Cir. 1994).  Good cause for the entry of a confidentiality order "is established on a showing that disclosure will work a clearly defined and serious injury to the party seeking closure.  The injury must be shown with specificity."  *Id.* at 786 (quoting *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1071 (3d Cir. 1984)) (quotations omitted).  If the court determines that discovery policies require that material be disclosed, "the issue becomes whether they should 'be disclosed only in a designated way.'"  *Id.* at 787.  "Courts also have a great deal of flexibility in crafting the contents of protective orders to minimize the negative consequences of disclosure and serve the public interest simultaneously."  *Id.*  The most common type of order is one that limits who may have access to the information and the use to which these persons may put the information.  *Id.*

Confidentiality orders are commonly entered in this District to protect parties' confidential business information.  *See* Lite, New Jersey Federal Practice Rules, L.Civ.R. 5.3, Comment 4. Standard terms in a confidentiality order allow parties to designate particularly sensitive business information as "[Outside] Attorney's Eyes Only," which "may be disclosed only to *outside counsel* for the receiving party[.]"  *See* N.J. Local Civil Rules, Appx. S at ¶¶ 2, 7 (emphasis added). Another standard term is that the confidential information may be used only for purposes of the instant litigation and not for any other commercial, business, or personal use.  *Id.* at ¶ 3; *see also*

11

*In re Deutsche Bank Tr. Co. Americas*, 605 F.3d 1373, 1378 (Fed. Cir. 2010).

**c)  Alternatively, a Confidentiality Order with a Prosecution Bar and Covenant Not to Sue Is Appropriate when Opposing Counsel Is a Competitive Decisionmaker.**

A court can also impose a confidentiality order containing a prosecution bar and a covenant not to sue on litigation counsel, which is primarily determined by whether such counsel is also involved in competitive decision-making. *See, e.g.*, *Blackbird Tech LLC v. Serv. Lighting & Elec. Supplies, Inc.*, 2016 WL 2904592, at *6, n.6 (D.Del. May 18, 2016). The Federal Circuit defines competitive decisionmaking as "shorthand for a counsel's activities, association, and relationship with a client that are such as to involve counsel's advice and participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor." *Deutsche Bank*, 605 F.3d at 1378. Confidentiality orders are appropriate to limit competitive decisionmakers' access to information in "patent infringement cases when trial counsel also represent the same client in prosecuting patent applications before the PTO." *Id.* at 1379. In some cases, counsel may also be designated competitive decisionmakers based on their history as an inventor on patents for another client. *Front Row*, 125 F. Supp. 3d at 1293-1295. A party's confidential information learned by opposing counsel in litigation could be used in prosecuting other patents—even if inadvertently[8]—to modify patent applications to the advantage of such opposing counsel's clients. *See Deutsche Bank*, 605 F.3d at 1379-80. A safeguard frequently used in these situations is a "prosecution bar"—a restriction that prevents litigation counsel from prosecuting patent claims at the USPTO and drafting patents for a designated period.

---

[8] Courts have recognized that it "is very difficult for the human mind to compartmentalize and selectively suppress information once learned, no matter how well-intentioned the effort may be to do so." *Deutsche Bank*, 605 F.3d at 1378.

The Federal Circuit requires the "party seeking imposition of a patent prosecution bar" to show (1) the information designated to trigger the bar, (2) the scope of activities prohibited by the bar, (3) the duration of the bar, and (4) the subject matter covered by the bar are designed to "reasonably reflect the risk presented by the disclosure of proprietary competitive information." *Id.* at 1381. Courts have recognized that the risk of disclosing confidential information is not limited to pending patent applications being modified to the detriment of the disclosing party. Where there is a risk of confidential information being improperly used in a future action, both a prosecution bar and a covenant not to sue are appropriate to protect Defendants' confidential information and should be "broadly construed in favor of Defendants." *Blackbird*, 2016 WL 2904592 at *6 n.6.

## IV. ARGUMENT

Messrs. Shore and Chan cannot represent AG18 in this case, based on, among other things, the substantial overlap between the issues in this case and their personal interests—and the risk this overlap poses to Defendants' CI.[9] Defendants will need to disclose confidential technical and business information to defend this suit. And such disclosure would be to direct competitors who are inventors and owners of issued patents and patent applications pending before the USPTO covering location based restrictions on gaming and wagering using mobile devices. There is simply no practical way for this case to proceed under the extraordinary circumstances created by the Shore Chan lawyers.

Alternatively, though Defendants maintain that the Shore Chan lawyers simply cannot be permitted to participate in this case, if they are ultimately permitted to do so, only two options remain that would adequately safeguard Defendants' CI: (1) prohibiting Plaintiff's Shore Chan

---

[9] Mr. Lipshutz should be disqualified for the reasons discussed below in section IV.a.4.

counsel from receiving or in any way being given access to Defendants' CI produced or disclosed in this case throughout the duration of this litigation thru appeal (as reflected in Alternative 2 to the Proposed Order); or (2) imposing a "Patent Prosecution Bar" and "Covenant Not To Sue" (as defined in Alternative 3 to the Proposed Order) from the Shore Chan counsel and any related entities.

a) **The Shore Chan Lawyers—Messrs. Shore, Chan and Lipschutz—Should Be Disqualified**

Given the extraordinary nature of the facts presented in this case, disqualification of the Shore Chan lawyers is the only truly appropriate remedy to adequately protect Defendants' CI. Plaintiff's counsel, Messrs. Shore and Chan, are named inventors on their own patent portfolio directed to technical subject matter that substantially overlaps with that of the Asserted Patents. Ex. 2 (Cotropia Decl.) at ¶¶ 18-36.  Messrs. Shore and Chan are competitive decisionmakers in their competing business in the mobile gaming space.  Ex. 14 (Shriro Decl.) at ¶ 7.  Given that posture, Messrs. Shore and Chan simply cannot properly and safely access Defendants' CI disclosed in this case, and thus should be disqualified.

1. **Messrs. Shore and Chan Are Inventors of Patents Directed to the Same Subject Matter as the Asserted Patents.**

The technology disclosed and claimed in the Asserted Patents, which Defendants are accused of infringing, is *the very same subject matter* disclosed and claimed in the Shore Chan Patents.  Both sets of patents are directed to "Location-Based" "Gaming" or "Wagering."  Out of the 159,000 possible classifications, the Shore Chan Patents and Asserted Patents have also both been designated by the USPTO *in the exact same Cooperative Patent Classification G07F 17/32*. Facts at ¶ 6; Ex. 2 (Cotropia Decl.) at ¶¶ 22, 26; *see also* Appx. B to Ex. 2 (Cotropia Decl.) (showing CPCs of exemplary patents).

The substance of the Shore Chan Patents and the Asserted Patents is also remarkably

similar. Facts at ¶ 5. Below is a comparison of portions of the Shore Chan Patents with the Asserted

Patents including exemplary claims, further demonstrating the substantial overlap in technology:

| Shore Chan Patent Specification | Asserted '205 Patent Specification |
|---|---|
| U.S. Patent Pub. No. 2020/0066107 (Inventors: Michael W. Shore, Alfonso G. Chan, et al) | U.S. Patent No. 9,978,205 (Inventors: Nicholas Koustas, John Mix, Alexander Oxman) |
| [0012] In one embodiment, a GPS-based or other location detection based method and system can be implemented, wherein when a user logs onto the system from a location using a mobile device (e.g., tablet, laptop, smart phone, Wi-Fi enabled computer, etc.), the location of the user is determined and sent to the system so that the system is aware of where the user is located. Based on that location, the system knows (1) whether use of the system is legal/allowed in that jurisdiction; (2) if legal/allowed, what limits exist in that location on the types/amounts of bets as prescribed by laws and regulations; and (3) based on those prescribed limits, the options presented to the user are conformed to the laws and regulations that apply. | [col. 6 lns. 46-58] The second software module shown in FIG. 2 is the Gaming Option Creation module 210. This module is designed to create a list of the available game options. This module uses information about the location of the user, such as legal jurisdiction and casino location, to determine which game options are presented to the player. The Player Interface module 270 could access the Gaming Option Creation module 210 to present the player with a list of gaming options. |
| **Original Claims:**[10] 1. A computer-implemented method for location-based wagering, said method performed by a computer system having one or more processors and memory storing one or more programs for execution by said one or more processors, said method comprising: invoking an online wagering service via a mobile device; determining a location of said mobile device and a jurisdiction associated with said location; and | **Asserted Claim:** 12. A gaming system comprising: at least one processor; at least one communication interface; and a memory containing a plurality of program instructions configured to cause the at least one processor to: create a list of player gaming options for a player at a current location, wherein the list of player gaming options restricts limits on wagers or types of |

---

[10] The claims in Pub. No. 2020/0066107 have since been amended. It is clear based on the originally filed claims, however, that the applicants of the Shore Chan Patents believe that the claim presented here is within the scope of their patent. Additionally, if Messrs. Shore and Chan are granted access to Defendants' CI, the scope of the claims of the Shore Chan Patents could be amended in view of that confidential information to avoid the prior art but more accurately read on Defendants' products and technology. Ex. 2 (Cotropia Decl.) at ¶¶ 17, 49-59.

| | |
|---|---|
| authorizing said mobile device access to said online wagering service based on said location of said mobile device.<br>4. The method of claim 1 further comprising: based on prescribed limitations, displaying wagering options via said mobile device that conform to said laws and/or regulations of said jurisdiction. | games allowed in the current location of the player;<br>transfer the list of player gaming options to a player gaming client through the communication interface;<br>receive a selection of player gaming options from the player gaming client through the communication interface;<br>initiate a game based on the selection of player gaming options; and<br>compensate the player with player winnings. |

Messrs. Shore and Chan cannot dispute that the technologies in their patents are closely related to the technologies of the Asserted Patents.[11]  The Asserted Patents cite to similar prior art, (Facts at ¶ 8), and—even more incredibly—extensively cite to the Shore Chan Patents, and vice versa (Facts at ¶ 7), confirming the overlap in subject matter.  Appx. D to Ex. 2 (Cotropia Decl.).

AG18 alleges that Defendants infringe the Asserted Patents.  In particular, AG18 identifies Defendants' website and applications for remote wagering, which reference confirming customers' locations, as well as its use of GeoComply, a company that provides services related to the location of customers.  Dkt. 28-10.  AG18 thus alleges that Defendants' technology is similar to the technology disclosed and claimed in the Asserted Patents, which, as explained above, is ***the very same subject matter*** disclosed and claimed in the Shore Chan Patents.

### 2.    Messrs. Shore and Chan Are Competitors and Competitive Decisionmakers.

Messrs. Shore and Chan are co-owners and officers of Micro-Gaming, a Texas limited liability company.  Ex. 3 (Feb. 16, 2022 Hearing Tr.) at 22:24-23:2; Ex. 4 (Micro-Gaming Franchise Tax Report) at 1-2.  The principal office address of Micro-Gaming is that of Shore Chan LLP, and the franchise tax report even specifies that documents addressed to Micro-Gaming be

---

[11] Indeed, they have already acknowledged that their patents contain "similar technology to what is at issue in this case."  Dkt. 17 at 1 (citing Dkt. 15).

directed care of "Shore Chan Bragalone DePumpo LLP."  Facts at ¶ 9.

Micro-Gaming is the assignee of the Shore Chan Patents—the subject matter of which indisputably overlaps with that of the Asserted Patents—and is therefore active in the same technology space as AG18 and (allegedly) Defendants. *See* Ex. 2 (Cotropia Decl.) at ¶ 35.  Further, Micro-Gaming, "a business whose main practice is acquiring patents" directed to this overlapping subject matter, is a competitor of AG18 and Defendants.  *See Blackbird*, 2016 WL 2904592 at *4.

Moreover, Messrs. Shore and Chan, as "officers and principals" of Micro-Gaming, are both competitors and "competitive decisionmakers."  *Blackbird*, 2016 WL 2904592 at *4.  While Mr. Shore "attempts to minimize" his and Mr. Chan's role in Micro-Gaming's "patent acquisition process, [] their involvement is more than sufficient to create a considerable risk that they will 'have a difficult time compartmentalizing [their] knowledge' of Defendants' financial and technical information when making the final say on what patents to acquire and assert."  *Id.* (quoting *U.S. v. Dentsply Int'l, Inc.*, 187 F.R.D. 152, 159–60 (D. Del. 1999)).

This is not the first time Messrs. Shore and Chan have faced a disqualification motion based on their roles as competitive decisionmakers of Micro-Gaming.  Indeed, in *Front Row*, where Messrs. Shore and Chan were also lead counsel, the court addressed less egregious facts than those presented here.  In *Front Row*, the court determined that "both Mr. Shore and Mr. Chan are competitive decisionmakers" based on their involvement with Micro-Gaming.  125 F. Supp. 3d at 1292-95.[12]  The court recognized that, as inventors of the Shore Chan Patents, they "swore under

---

[12] While the court ultimately denied the disqualification motion, the facts underlying that portion of the *Front Row* decision are readily distinguishable from those of the case at bar, where Plaintiff's counsel itself admits that the subject matter of the Shore Chan Patents overlaps with that of the Asserted Patents.  Indeed, in their submission in this very case, Messrs. Shore and Chan conceded that "the pending patents owned by Michael W. Shore and Alfonso G. Chan are similar technology to what is at issue in this case." Dkt. 17 (citing Dkt. 15).  Moreover, Messrs. Shore and Chan's continued participation in the *Front Row* case was subject to a protective order imposed

oath that they reviewed, authorized, and contributed as inventors to the subject matter in Micro-Gaming's patent applications."  *Id.* at 1294.  In the *Front Row* case, as here, Mr. Shore did not contest that he and Mr. Chan are co-owners of Micro-Gaming, but they now say that they have only "minority positions."  Ex. 3 (Feb. 16, 2022 Hearing Tr.) at 22:24-23:2.  The findings in *Front Row* directly contradict this allegation:  "***Mr. Shore and Mr. Chan are not minor figures within Front Row and Micro-Gaming Ventures LLC***. . . . [As] lead litigation counsel[, t]hey do not fall within the low risk category that *In re Deutsche Bank Trust Co. Americas* described.  They are not 'junior level attorneys.'  They do not serve as 'liaisons between prosecuting attorneys and clients,' as their own businesses essentially are their clients."  *Front Row*, 125 F. Supp. 3d at 1294 (quoting 605 F.3d at 1379-80).  Additionally, Messrs. Shore and Chan are ***still*** "actively filing patent applications that overlap with the" Asserted Patents. *Id.* Whether or not they are involved in day-to-day prosecution, "by filing new patent applications, [Messrs. Shore and Chan] 'control the content of patent applications and the direction and scope of protection sought in those applications.'" *Id.*

The problem here is significantly more troubling than *Front Row*.  Messrs. Shore and Chan are not merely prosecuting patents **on behalf of** Micro-Gaming, but **they are personally named inventors on pending patent applications**, are competitors[13] with Defendants, and are competitive decisionmakers in their own business and dealing for themselves.  Their activities go beyond the usual scenario of an attorney being both litigation counsel and prosecution counsel.  Rather,

---

by the Court containing a strong prosecution bar.  Also unlike in *Front Row*, Messrs. Shore and Chan have identified no longstanding affiliation with AG18—this lawsuit is apparently the first in which Messrs. Shore and Chan have represented AG18—and thus disqualification of Messrs. Shore and Chan would present minimal burden to AG18.

[13] Based on what Defendants currently know, both Shore Chan and Plaintiff are nonpracticing entities in the gaming space.

Messrs. Shore and Chan are wearing two hats—on the one hand, as litigation counsel for a patent plaintiff, and, on the other, as competing **business people** and **inventors**.  As owners and officers of Micro-Gaming, they are both attorney and client involved in "decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor." *Deutsche Bank*, 605 F.3d at 1378.

In *Front Row*—where there was not the same level of overlapping subject matter between the Shore Chan Patents and the patents-then-in-suit—the court concluded that a prosecution bar was appropriate and "would force Mr. Shore and Mr. Chan to 'make a choice: either prosecute patents in this family of patents, or litigate the patents at issue, but not both.'"  125 F. Supp. 3d at 1295.  In the instant matter, however, the only truly appropriate solution is to disqualify Messrs. Shore and Chan from the case entirely, because the current situation presents far more problematic circumstances and a greater risk of misuse of Defendants' CI.  Not only are Messrs. Shore and Chan competitive decisionmakers of a company in the same mobile gaming technology space as Defendants, but the Shore Chan Patents—including pending patent applications—are directed to the **same subject matter as the Asserted Patents**. As such, a prosecution bar cannot adequately protect Defendants' legitimate interest in having to turn over confidential information directly to competitors and purported inventors in the same field.  Ex. 2 (Cotropia Decl.) at ¶¶ 62-66.

### 3.   Messrs. Shore and Chan Should Be Disqualified.

Messrs. Shore and Chan should be disqualified because there is no circumstance under which they can properly access Defendants' CI disclosed in this case to adequately protect the Defendants—information they would need in order to effectively represent AG18 here.  The potential harm to the Defendants significantly outweighs any harm to Plaintiff.

In order to defend against the allegations presented here, Defendants will need to rely on, and thus be obligated to produce, highly confidential technical and business information.  As is

typical for cases such as this, Defendants anticipate that a confidentiality order will be entered that includes *inter alia* an outside attorney's eyes only designation, and a restriction that Defendants' confidential information shall only be used for the instant action and not for any other purpose. *See* N.J. Local Civil Rules, Appx. S at ¶¶ 2, 3, 7.  Simply put, Messrs. Shore and Chan will have a duty of confidentiality to Defendants that they cannot fulfill.  Accordingly, the Court should exercise "its inherent authority to supervise the professional conduct of attorneys appearing before it" to disqualify Messrs. Shore and Chan.  *Boston Sci.*,147 F. Supp. 3d at 243.

There is a serious concern that Defendants' CI could be (mis)used to not only further Micro-Gaming's prosecution of patents (*e.g.*, to target Defendants' technology), but also used against Defendants in subsequent litigation by Micro-Gaming, or otherwise used to Defendants' competitive disadvantage.  Ex. 2 (Cotropia Decl.) at ¶¶ 49-59, 62-66.  The purpose of "outside attorneys' eyes only" provisions in a confidentiality order is to shield information from ***all*** competitive business people, while at the same time allowing *only* outside counsel to access that information so that they may handle the litigation without restrictions.  Here, there can be no meaningful "outside attorneys'-eyes only" protection as long as Messrs. Shore and Chan are representing AG18 in this case; those attorney eyes are also the eyes of competitors, and the very eyes from which Defendants' CI must be shielded.

Importantly, Defendants need not allege—and the Court need not find—any intentional wrongdoing by the Shore Chan lawyers in order to grant the relief Defendants seek here.  The risk of inadvertent or improper use of Defendants' CI is palpable.  *Applied Signal Tech., Inc. v. Emerging Markets Commc'ns, Inc*., 2011 WL 197811, at *2-3 (N.D. Cal. Jan. 20, 2011).  Courts in similar situations have long recognized that it "is very difficult for the human mind to compartmentalize and selectively suppress information once learned, no matter how well

20

intentioned the effort may be to do so." *Deutsche Bank*, 605 F.3d at 1378. Indeed, the presumption under these circumstances is that, even assuming the best of intentions, Messrs. Shore and Chan will be unable to receive Defendants' CI and compartmentalize it in their minds only for use in this case. They will continue to know, and continue to use, Defendants' CI as they prosecute the Shore Chan Patents, and continue operation of the competing business in which they act as competitive decisionmakers.

The problem presented by this dynamic is not merely speculative. Mr. Shore's own behavior gives Defendants ample reason to be concerned about the misuse of their confidential information. Specifically, Mr. Shore sent an email to Defendants' counsel after the parties' hearing before Judge Allen, during which the very issues raised in this motion were discussed. *See* Ex. 12 (Feb. 18, 2022 Shore e-mail) at 1. In that e-mail—while arguing his position about this disqualification matter, and apparently as a purported solution to the problem presented—Mr. Shore directed Defendants to discuss a license ***to the Shore Chan Patents*** with Mr. Shore's co-inventors. *Id.* Again, this was ***not*** an invitation to license the Asserted Patents, but the patents controlled by Messrs. Shore and Chan. Mr. Shore even attached to his e-mail the "Micro-Gaming Ventures, LLC – Patent List," identifying at least fifteen patents and applications in the Shore Chan patent portfolio, six of which bear the title "Location-Based Wagering Via Remote Devices." *See id.* at 3.

Mr. Shore's email shows the precise issue at bar: while representing AG18 against Defendants in this case, Mr. Shore is ***at the same time*** acting to advance his own personal business interests, and the interests of his business, Micro-Gaming, in monetizing the Shore Chan Patents against Defendants, on the very same technology. That Mr. Shore could not resist commingling these issues ***for even two days*** following the February 16 hearing is alarming and militates in favor

21

of disqualifying the Shore Chan lawyers from further participation in this case in order to adequately protect Defendants' CI.  In offering to license the Shore Chan Patents to Defendants, Mr. Shore "is asserting that Defendants have encroached upon its exclusive right to exploit a specific technology in the marketplace", *Blackbird*, 2016 WL 2904592 at *4, and undercuts his assertion that Micro-Gaming is not a competitor to Defendants. Ex. 3 (Feb. 16, 2022 Hearing Tr.) at 37:23-24.  The potential harm to Defendants if Messrs. Shore and Chan are allowed to participate in this case substantially outweighs any hardship or inconvenience to Plaintiff.

Disqualification of Messrs. Shore and Chan at this stage of the litigation would present Plaintiff with only minimal inconvenience.  "The stage of this case is not particularly advanced, as this motion also comes long before trial." *Boston Sci.*, 147 F. Supp. 3d at 249.  Discovery has not yet begun.  *See id.*  An outstanding motion to dismiss has not yet been addressed.  Messrs. Shore and Chan have not identified any prior affiliation with AG18 and this lawsuit is apparently the very first in which Messrs. Shore and Chan represent AG18.  Additionally, with increased interest in mobile gaming at least since *Murphy v. National Collegiate Athletic Association*, 138 S. Ct. 1461 (2018), the patents are not directed to a specialized area of law. *Cf. Front Row*, 125 F. Supp. 3d at 1295.  "And more generally, 'there is no right to demand to be represented by an attorney disqualified because of an ethical requirement.'" *Id.* (quoting *Dewey v. R.J. Reynolds Tobacco Co.*, 109 N.J. 201, 218 (1988)).  Accordingly, AG18 may merely hire new counsel.

Defendants are also concerned that their confidential information could be used to their *competitive* disadvantage if disclosed to Messrs. Shore and Chan, such as by informing amendments to or even the addition of new matter to pending patent applications in the mobile gaming space.  Ex. 2 (Cotropia Decl.) at ¶¶ 52-59, 63-65.  As is explained in the accompanying Declaration of Andrew Shriro, DraftKings considers its non-public technical information (such as

22

its source code, technical designs, prototypes, specifications, and architectures) as well as its non-public business information (such as financial data, business plans, and analytics) to be confidential or trade secret and DraftKings takes steps to guard this information from disclosure. Ex. 14 (Shriro Decl.) at ¶¶ 3-4 & 6.  However, this information, if disclosed to Messrs. Shore and Chan, could harm DraftKings' legitimate business interests and be used against DraftKings in the future.  *Id.* at ¶¶ 5, 7-8.

Mr. Shore's representations to the Court that "there is nothing that can go into any patent application for Micro-Gaming that is not included in what was disclosed in those specifications ten years ago," and that it "is physically impossible" that Defendants' "secret information could end up in a patent application for Micro-Gaming[,]" "because everything in a Micro-Gaming patent application has to be included in the provisional specifications or the original patent specifications that were filed a decade ago" are demonstrably false.  Ex. 3 (Feb. 16, 2022 Hearing Tr.) at 23:4-6, 23:21-24:3; Ex. 2 (Cotropia Decl.) at ¶¶ 37-59.  At least one of the pending Shore Chan patent applications is a continuation-in-part application.  "A continuation-in-part is an application filed during the lifetime of an earlier nonprovisional application, repeating some substantial portion or all of the earlier nonprovisional application *and adding matter not disclosed in the earlier nonprovisional application*."  MPEP § 201.08.  New matter has been introduced into the Shore Chan Patents *at least four times* over the past decade.  Ex. 2 (Cotropia Decl.) at ¶¶ 40-46.  And in each of those cases, the Shore Chan Patents *claimed* the newly added material. *Id.*  Moreover, the newest Shore Chan Patent application, filed on December 27, 2021 *after the initiation of this lawsuit*, is a continuation-in-part which likely added new subject matter.  *Id.* at ¶ 45; Ex. 12 at 1, 3.

Thus, despite Mr. Shore's inaccurate representations to the Court, there is a palpable risk

of misuse of Defendants' CI, such as, among other things, to refine the scope of the Shore Chan Patents. Ex. 2 (Cotropia Decl.) at ¶¶ 52-59, 62-66. In fact, Mr. Shore doubled-down on this false representation when, in a follow-on e-mail to Defendants' counsel, he claimed that "[w]ith a priority date of 8 years ago, the subject matter of these pending applications (and any later divisional or continuation applications) cannot possibly claim any subject matter not within the '554 application's specification"—while at the same time identifying a continuation-in-part application filed in 2019 that added new matter. Ex. 12 (Feb. 18, 2022 email from Shore to Guy).[14]

Furthermore, this case also presents serious conflicts of interest that cannot be navigated under the circumstances. "[A] lawyer shall not represent a client if the representation involves a concurrent conflict of interest," which may include "responsibilities to another client, a former client, *or a third person* or by a personal interest of the lawyer." RPC 1.7(a)(2) (emphasis added). In addition to their responsibilities to their client, Messrs. Shore and Chan will have a responsibility *to Defendants* if the Court enters a Confidentiality Order that requires Messrs. Shore and Chan to keep Defendants' CI produced in this litigation confidential, and to not use Defendants' CI for any other purpose than this litigation. This conflict of interest cannot be resolved, given Messrs. Shore's and Chan's dual roles as competitive decisionmakers in Micro-Gaming and the inability of the "human mind to compartmentalize and selectively suppress information once learned." *Deutsche Bank*, 605 F.3d at 1378.

Ultimately, the Court must "balance the competing interests, weighing the need to maintain the highest standards of the legal profession against a client's right to freely choose its counsel." *Steel v. Gen. Motors Corp.*, 912 F. Supp. 724, 745 (D.N.J. 1995), *aff'd sub nom. Cardona v. Gen.*

---

[14] Indeed, in a recent e-mail, Mr. Shore asserted "[w]e have no duty to DraftKings." Ex. 13 (Feb. 17, 2022 E-mail) at 1. But the Shore Chan lawyers *will* have a duty of confidentiality to DraftKings after a confidentiality order is entered, and that is a duty they will not be able to live up to.

*Motors Corp.*, 942 F. Supp. 968 (D.N.J. 1996). However, if there is any doubt as to the propriety of an attorney's representation of a client, such doubt must be resolved in favor of disqualification. *Maldonado v. New Jersey ex rel. Admin. Office of Cts.-Prob. Div.*, 225 F.R.D. 120, 137, 141-42 (D.N.J. 2004). Here, any potential harm to Defendants significantly outweighs any harm to Plaintiff should Shore Chan be disqualified from this litigation. Accordingly, Messrs. Shore and Chan should be disqualified before they are ever granted an opportunity to access Defendants' CI.

### 4. Mr. Lipschutz Should Also Be Disqualified for Related Reasons.

Mr. Lipschutz is the associate attorney at Shore Chan and should be similarly disqualified from this case. Restrictions on counsel receiving confidential information is generally performed on a counsel-by-counsel basis. *See Deutsche Bank*, 605 F.3d at 1380. However, RPC 1.10(a) provides:

> When lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by RPC 1.7 or RPC 1.9, unless the prohibition is based on a personal interest of the prohibited lawyer and does not present a significant risk of materially limiting the representation of the client by the remaining lawyers in the firm.

In the instant case, Shore Chan should be disqualified because of Messrs. Shore and Chan's conflicts and the practical inability for them to proceed in this case. Should Messrs. Shore and Chan be disqualified (which they should be), Shore Chan's ability to continue to represent AG18 would be materially limited, in particular by leaving only Mr. Lipschutz to participate. It is also not practical that a firm with approximately sixteen lawyers can effectively "wall off" the only two named partners of the firm. Disqualification questions of an attorney require a "keen sense of practicality as well as a precise picture of the underlying facts." *Fragoso*, 433 F. Supp. 3d at 627. Based on the size of Shore Chan and the fact that Mr. Lipschutz apparently reports to competitive decisionmakers, Messrs. Shore and Chan, the risk of inadvertent disclosure is unavoidable. *See Intel Corp. v. VIA Techs., Inc.*, 198 F.R.D. 525, 530 (N.D. Cal. 2000). While ordinarily Mr.

Lipschutz could rely on the assistance and guidance of Messrs. Shore and Chan, they would not be able to provide adequate assistance or guidance without access to Defendant's CI.  While Mr. Lipschutz's situation must be considered separately, the outcome is the same.

**b)      Alternatively, the Shore Chan Lawyers Should Either Be Denied Access to Defendants' Confidential Information, or Should Be Subject to a Prosecution Bar and <u>Covenant Not to Sue Defendants.</u>**

Defendants believe disqualification is not only warranted but is, in reality, the only adequate remedy under the exceptional circumstances detailed above.  Nevertheless, in the event the Shore Chan lawyers are permitted to remain in this case, there are only two practical alternative resolutions—either the Shore Chan lawyers should be denied from having any access to Defendants' CI (and will just have to litigate the case without it), or they should be both subject to a strict prosecution bar and provide a covenant not to sue Defendants and their affiliates. *See, e.g.*, *Blackbird*, 2016 WL 2904592, at *6.

While, under the former resolution, Shore Chan's ability to litigate this case may be impaired, that result is entirely of Messrs. Shore and Chan's own doing, and should have been foreseen by Messrs. Shore and Chan before accepting the representation of AG18 in this case. Under the latter resolution, the Court would be exercising its inherent power and properly applying Rule 26(c) by fashioning an appropriate confidentiality order with protections adequate to protect Defendants' CI and resolving the two-hat problem by forcing Messrs. Shore and Chan to choose either representing AG18 or, instead, foregoing such representation in favor of continuing their pursuit of patent protection in the mobile gaming space.  What is clear is that ***Messrs. Shore and Chan cannot do both***.

Absent disqualification or prohibition on access to Defendants' CI, the combination of a stringent prosecution bar and covenant not to sue is the only adequate solution.  As one example, in *Blackbird*, the court imposed a prosecution bar and a covenant not to sue using after-acquired

26

patents to protect Defendants from inadvertent misuse or disclosure by competitive decisionmakers. 2016 WL 2904529, at *6. Defendants' primary concern here, like the defendants in *Blackbird*, is turning over confidential information to Messrs. Shore and Chan only to have their own confidential information used against them, *e.g.*, in future litigation seeking to enforce the Shore Chan Patents or otherwise.

Notably, in *Front Row*, Messrs. Shore and Chan specifically requested to narrow the prosecution bar to allow them to pursue patents directed to "gambling and/or wagers." 125 F. Supp. 3d at 1292. The court recognized that a narrower prosecution bar would enable Messrs. Shore and Chan to "use ***confidential location-authorization aspects of the Defendants' data*** to contribute to the gambling aspects of new patents without violating the prosecution bar." *Id.* The court deemed this improper and imposed a more stringent prosecution bar that was sufficiently specific, but "broad enough to ensure that opposing parties do not misuse confidential information." *Id.* at 1292, 1295. A prosecution bar is necessary here because no counsel (including Messrs. Shore and Chan) should be permitted to use Defendants' CI in their pending applications or future applications, such as "to reinforce existing patents and future patents that authorize gambling based on the user's location." *Id.* at 1293. Based on the claims in the most recent Shore Chan Patents, Messrs. Shore and Chan appear to have done exactly what the *Front Row* court warned against. As competitors and competitive decisionmakers, "there is a concrete, particularized risk of inadvertent disclosure and misuse here. To give [Messrs. Shore and Chan] access to Defendants' confidential technical and financial information would raise the specter of prosecuting or acquiring patents that read on Defendants' products. . . . When attorneys serve the dual role of competitive decisionmaker and litigation counsel, . . . courts must consider both of those roles and cannot simply ignore the competitive decisionmaker aspect. For this reason, [the

Court] cannot approve [Plaintiff's] request for *carte blanche* access to Defendants' confidential information." *Blackbird*, 2016 WL 2904592 at *5-6.

Defendants do not want to provide competitors with their non-public and confidential technical and business information, whether in litigation or otherwise.  Ex. 14 (Shriro Decl.) at ¶¶ 7-8.  Defendants protect their confidential technical and business information, as the disclosure (inadvertent or otherwise) of this information could be used against them, harming their legitimate business interests and providing competitors with an unfair advantage.  *Id*. at ¶¶ 5-8.  As in *Front Row*, "Defendants in this case managed to 'identify [] specific confidential information that could be misused, apart from broad allegations of potential harms.'  The Defendants can point to [and have identified] recent patent applications that could either benefit directly from the Defendants' confidential information or serve as the foundation of future litigation.  This harm is not 'highly speculative.'"  125 F. Supp. 3d at 1295 (citing *Helferich Patent Licensing, LLC v. Suns Legacy Partners, LLC*, 2012 WL 6049746, at *3 (D. Ariz. Dec. 5, 2012)); *see also Telebuyer, LLC v. Amazon.com, Inc.*, 2014 WL 5804334, at *2 (W.D. Wash. July 7, 2014) ("Source code is highly confidential, technical information that creates a heightened risk of inadvertent disclosure.") (quotations omitted); *Applied Signal*, 2011 WL 197811, at *2 ("In contrast with financial data or business information, confidential technical information, including source code, is clearly relevant to a patent application and thus may pose a heightened risk of inadvertent disclosure.").  The potential harm is real.

## V.  RELIEF REQUESTED

For the reasons set forth above, this Court should disqualify Plaintiffs' counsel, the Shore Chan lawyers, from litigating this case.  In the alternative, the Court should either: (1) prohibit Plaintiff's Shore Chan counsel from receiving or in any way being given access to Defendants' confidential information produced or disclosed in this case throughout the duration of this litigation

through appeal (as reflected in Alternative 2 to the Proposed Order); or (2) impose a "Patent Prosecution Bar" and "Covenant Not To Sue" (as defined in Alternative 3 to the Proposed order) from the Shore Chan counsel and any related entities.

Respectfully submitted,

*/s/ James E. Cecchi*
James E. Cecchi, Esq.
Lindsey H. Taylor
CARELLA, BYRNE, CECCHI, OLSTEIN,
BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, NJ 07068
Tel: (973) 994-1700
Fax: (973) 994-1744

G. Hopkins Guy III
BAKER BOTTS L.L.P.
1001 Page Mill Road Building One, Suite 200
Palo Alto, CA 94304-1007
(650) 739-7500

Jamie R. Lynn
BAKER BOTTS L.L.P.
700 K St. NW
Washington, DC 20001
(202) 639-7786

Robert L. Maier
Michael E. Knierim
BAKER BOTTS L.L.P.
30 Rockefeller Plaza
New York, NY 10112-4498
(212) 408-2500

*Attorneys for Defendants DraftKings Inc.,*
*DraftKings Inc., and Crown Gaming Inc.*

Dated:  March 7, 2022